## COURT OF APPEALS.
### February 22, 1910.

# THE PEOPLE EX REL. OSCAR DURYEA v. DAVID WILBER.

(198 N. Y. 1.)

CONSTITUTIONAL LAW—LAWS 1909, CHAP. 400, REQUIRING LICENSE FOR PUBLIC DANCING ACADEMIES UNCONSTITUTIONAL.

It is a general principle that legislation which has for its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud or immorality is valid. But an individual has the right to carry on any lawful business in a lawful way, and police regulations must not be unreasonable nor must they make unjust discrimination against individuals or classes.

Chapter 400 of the Laws of 1909, amending the New York charter, provides that "no public dancing academy shall be conducted nor shall dancing be taught or permitted in any public dancing academy unless it shall be licensed, pursuant to this act and the license be in force and not suspended," and a violation of the provision is made a misdemeanor. *Held*, that a license is not required for the rooms or places in which dancing is taught in the city of New York to preserve public health and safety, nor can it be justified on the ground that the business there conducted is such as to attract crowds and require police surveillance nor does it purport to be intended as a protection to minors. The act is arbitrary and unjustly discriminates against public dancing academies as defined therein, and so far as it requires a license as therein provided is void.

People ex rel. Duryea v. Wilber, 134 App. Div 965, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 5, 1909, which affirmed an order of Special Term dismissing a writ of habeas corpus.

The relator, a reputable dancing teacher in New York city, was on October 2, 1909, arrested by the defendant for willfully and unlawfully violating the provisions of chapter 400 of the

Laws of 1909, in that he did, at the place therein stated, conduct a school for dancing without having obtained a license as required by law.    The warrant for the relator's arrest was obtained upon a written information signed and sworn to by the defendant, which stated that on that day (October 2, 1909) there appeared in the New York *Times,* a newspaper published and sold in New York city, an advertisement of the relator, a copy of which is made a part of the information, and that on said day the informant visited the premises of the relator, and from which information we quote as follows: " I asked the said Oscar Duryea whether he was the person referred to in said advertisement and conducted the Oscar Duryea school, and the said Oscar Duryea stated that he was and that he was the proprietor of said school and said premises.    I then suggested to said Oscar Duryea that I desired to be instructed in dancing, and asked the said Duryea whether I could be taught at that place.    Said Oscar Duryea stated to me that he conducted a dancing school or academy, and that he had various dancing classes; that I could be taught privately, that is, individually, if I desired, or I could join one of the dancing classes; that he had classes every morning, afternoon and evening, and that he had classes for children every afternoon.    He stated that the Monday and Thursday night classes were for young people, and that these classes had dancing *de luxe* once a month, to which the members of the class could invite their friends, who could become part of the class which was on that evening instructed by him if they so desired at a charge of $1.00.    The said Duryea also handed me at that time a catalogue  .  .  . which he stated to me he had issued since September 30, 1909, to advertise his business.    He stated to me that he charged for instruction in the evening classes $12.50 for fifteen lessons; that for individual instruction he charged $15 for six lessons, and that he had charged this amount to pupils in dancing since

the 30th day of September, 1909. I then paid said Duryea $1.00 for one optional lesson in class of October 2, 1909. . . . At the time that I was in said premises I saw and heard a large number of men and women being instructed in dancing by said Duryea, and said Duryea stated to me that the persons dancing in the place at that time were his pupils in dancing and his regular Saturday night dancing class. I thereupon told him that I was a police officer, and that I had been sent to investigate the place. . . . He stated that he had not procured a license as he had been advised by his counsel not to do so."

Chapter 400 of the Laws of 1909 is an amendment to the Greater New York charter by adding seven new sections after section 1487 thereof, as follows:

" Section 1488. The words ' public dancing academy,' when used in this act, shall be taken to mean:

" 1. Any room or place in the city of New York in which dancing is taught, and which is designated, advertised or held out by advertisements, signs, placards or public notices of any kind, as a dancing school, dancing academy, dancing class, school for dancers, or place where dancing is taught; and

" 2. In which payment is made for instruction or to which admission can be had by paying for instruction or for the right to be admitted, or to which admission can be had by the purchase, possession or presentation of a ticket or token, or in which a charge is made for the caring for clothing or other property.

" Section 1489. No public dancing academy shall be conducted nor shall dancing be taught or permitted in any public dancing academy unless it shall be licensed pursuant to this act and the license be in force and not suspended. Any person violating this section shall be guilty of a misdemeanor.

" Section 1490. All public dancing academies shall be li-

censed by the mayor or other licensing authority of the city of New York; the fee for each such license shall be fifty dollars for each year or fraction thereof. All licenses issued on or between the first day of April and the thirtieth day of September of any year shall expire on the thirty-first day of March of the succeeding year. All licenses issued on or between the first day of October and the thirty-first day of March of any year shall expire on the thirtieth day of September of the succeeding year. No license shall be issued unless the place for which it is issued complies with all laws, ordinances, rules and the provisions of any building code applicable thereto, and is a safe and proper place for the purpose for which it shall be used, properly ventilated and supplied with sufficient toilet conveniences.

" Section 1491. No license shall be issued until the licensing authority shall have received a written report of an inspector and of the bureaus and departments having supervision over the building or premises to be licensed or the construction thereof, that it complies with all applicable laws, ordinances, rules and provisions of building code. No license shall be renewed except after reinspection by the licensing authority. Additional inspection of every licensed dancing academy may be made under the direction of the licensing authority. All inspectors shall be permitted to have access to all public dancing academies at all reasonable times and whenever they are open for dancing, instruction in dancing or for any other purpose. Inspectors shall be required to report all violations. All reports shall be in writing and shall be filed and made matters of public record.

" Section 1492. No liquors shall be sold, served or given away in any public dancing academy, or in any room connected therewith or on the same floor of the building. The word ' liquors ' as used in this section shall be construed as defined in the liquor tax law of this state.

" Section 1493. The license of any public dancing academy shall be forfeited on conviction of any person for violation of section fourteen hundred and ninety-two of this act, or upon the conviction of any person for violation of section four hundred and eighty-four or section eleven hundred and forty-six of the penal law in or with respect to the premises of any public dancing academy. The license of any public dancing academy may be revoked by the licensing authority whenever the licensed premises do not comply with section fourteen hundred and ninety of this act, provided that the licensee or person in charge shall be served with a copy of the report or complaint and shall have the right to a public hearing.

" Section 1494. The mayor or licensing authority of the city of New York may appoint such inspectors and other officials necessary to carry out the provisions of this act as may be authorized by the board of estimate and apportionment of said city or other authority having the right to appropriate public moneys. The money paid for licenses under this act shall be applied toward the payment of the salaries of the inspectors appointed hereunder. Any deficiency and any other expense of carrying this act into effect until appropriation can be made therefor shall be met by the issue of revenue bonds of the city.

" Section 2. This act shall take effect September thirtieth, nineteen hundred and nine."

After the relator's arrest he procured a writ of habeas corpus but the court at Special Term to which the writ was made returnable dismissed the same and paroled the relator in the custody of his counsel. An appeal was taken from said order to the Appellate Division where the order was affirmed and from the order of the Appellate Division an appeal is taken to this court.

*Julius M. Mayer* and *A. S. Gilbert* for appellant. Sections

1489 to 1494 inclusive (except section 1492), added to the Greater New York charter by chapter 400 of Laws of 1909, are unconstitutional, in that they are in violation of the 14th amendment of the Constitution of the United States, which provides: " No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." (*People ex rel. Armstrong v. Murphy,* 65 App. Div. 123; *People ex rel. Schwab v. Grant,* 126 N. Y. 473; *A. S. R. Co. v. Louisiana,* 179 U. S. 89; *Cotting v. Goddard,* 183 U. S. 79; *Connolly v. U. S. P. Co.,* 184 U. S. 540; *People ex rel. Farrington v. Mensching,* 187 N. Y. 8; *People ex rel. W. A. Co. v. Murphy,* 129 App. Div. 260; 195 N. Y. 126; *City of New York v. W. A. Co.,* 122 App. Div. 753; *Foster v. Scott,* 136 N. Y. 577.)

*William Travers Jerome, District Attorney* (*Terence Farley* and *Theodore Connoly* of counsel), for the respondent. The legislation in question is a valid exercise of the police power of the state. (*Barbier v. Connolly,* 113 U. S. 27; *People ex rel. W. A. Co. v. Murphy,* 195 N. Y. 126; *Clark v. Searle,* 1 Esp. 25; *Archer v. Willingrice,* 4 Esp. 186; *Frailing v. Messenger,* 16 L. T. 494; *Marks v. Benjamin,* 5 M. & W. 565; *Gregory v. Tuffs,* 6 C. & P. 271; *Van Rensselaer v. Hays,* 19 N. Y. 68; *Bogardus v. Trinity Church,* 4 Paige, 178; *Tanner v. Trustees,* 5 Hill, 121.) The occupations and kinds of business which, while they are not nuisances, are " clothed with a public interest " are subject to the police power of the state. (*Munn v. Illinois,* 94 U. S. 113; *People v. Budd,* 117 N. Y. 1; 143 U. S. 517; *Cargill Co. v. Minnesota,* 180 U. S. 452; *Willcox v. C. G. Co.,* 212 U. S. 19; *City of Brooklyn v. N. E. R. Co.,* 44 App. Div. 462; *People v. B., etc., R. Co.,* 70 N. Y. 569; *Bertholf v.*

*O'Reilly,* 74 N. Y. 509; *People v. King,* 110 N. Y. 418; *B. E. S. R. Co. v. B. S. R. Co.,* 111 N. Y. 132; *People v. Budd,* 117 N. Y. 1; *People v. Havnor,* 149 N. Y. 195; *People ex rel. Nechamcus v. Warden, etc.,* 144 N. Y. 529.) There is no force in the objection that the statute unjustly discriminates between places where dancing is taught and places where dancing is conducted but not taught. (*People v. Havnor,* 149 N. Y. 195; *Fire Dept. v. Stanton,* 159 N. Y. 225; *People ex rel. Nechamcus v. Warden,* 144 N. Y. 529; *T. H. Dept. v. Moeschen,* 89 App. Div. 526; 179 N. Y. 325; 203 U. S. 583; *People ex rel. Hatch v. Reardon,* 184 N. Y. 431; *People ex rel. Farrington v. Mensching,* 187 N. Y. 8; *A. S. R. Co. v. Louisiana,* 179 U. S. 89; *F. & M. Ins. Co. v. Dobney,* 189 U. S. 301; *A. P. Co. v. Lacy,* 200 U. S. 226.)

CHASE, J.:

A public dancing academy as defined by the statute is a room or place. It may be a small room, or a large place. It includes a room in a school building, and the parlors of a building otherwise used as a private house. Any room or place in the city of New York in which dancing is taught for a consideration to all applicants, pursuant to public notice of any kind, comes within the statutory definition. The license required is for the academy. If the *place* is licensed the act does not prescribe any moral or other qualities or qualifications for the teacher or the persons to be taught, or otherwise prescribe any moral or other standard or guide in the conduct of the dance. It is apparent, therefore, that the police power has not been exercised to preserve the morals of the city. The purpose of the act so far as appears from an inspection of it is to protect persons who are taught dancing from being taught in an unsafe, or unhealthy room or place. That clause of the statute which expressly prohibits a license being issued is as follows: " No license shall be issued unless the place for which it is issued

complies with all laws, ordinances, rules and the provisions of any building code applicable thereto, and is a safe and proper place for the purpose for which it shall be used, properly ventilated and supplied with sufficient toilet conveniences."

The laws, ordinances, rules and provisions of the Building Code are compulsory apart from the provisions of the statute under consideration. The provisions of the Building Code are ample to enforce the physical safety of any place as against fire or collapse, and we do not understand that the words " proper place " are intended to refer to anything other than physical conditions.

The only other object expressly stated in the statute, so far as we have referred to it, is to make sure that the rooms or places where dancing is taught are properly ventilated and supplied with sufficient toilet conveniences.

The charter of the city of New York provides that it shall " be the duty of every owner  .  .  .   and person interested, and of every lessee, tenant, and occupant of, or in any place, .  .  .   room,  .  .  .   building  .  .  .   and thing in said city,  .  .  .   to keep, place and preserve the same and every part, and the sewerage, drainage and *ventilation* thereof in such condition and to conduct the same in such manner that it shall not  .  .  .   *be dangerous or prejudicial to life or health.*" (Charter City of New York, section 1201 [L. 1901, ch. 466]; Ordinances of the City of New York [Sanitary Code, sec. 10]).

" No owner or lessee of any building or any part thereof shall lease, or let or hire out, or allow the same or any portion thereof to be occupied by any person  .  .  .   except when said building or such parts thereof are sufficiently lighted, *ventilated, provided and accommodated,* and are in all respects in that condition of cleanliness and wholesomeness for which this code or any law of this State provides, or in which they or either of them require any such premises to be kept." (Ordinances of the City of New York [Sanitary Code, sec. 17]).

It may be stated as a general principle that legislation is valid which has for its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud or immorality. (*People ex rel. Armstrong v. Warden, etc.,* 183 N. Y. 223; *People ex rel. Wineburgh Adv. Co. v. Murphy,* 195 N. Y. 126).

An individual has the right to carry on any lawful business in a lawful way. The maintenance of a dancing school is a lawful business, and a person who teaches dancing can only be required to obtain a license for the place in which dancing is taught, when such license is required for the purpose of protecting the interests of the municipality in one of the ways recognized as within the lawful exercise of the police power. An examination of the city charter and the ordinances passed pursuant to such charter, some of which we have mentioned, shows beyond controversy that a license is not required for the rooms or places in which dancing is taught in the city of New York to preserve public health and safety. Ample provision having been made therefor by the general provisions in the charter and ordinances, the special exercise of the police power is unnecessary and unwarranted, so far as it seeks simply to carry out the general provisions thus enacted in both charter and ordinances, and which are therein made compulsory. The act under consideration, so far as we have referred to it, can only be justified, therefore, upon the grounds that are the basis for requiring licenses for theaters and places of public amusement.

Licenses have been required for theaters and places of public amusement in this State for nearly a century. (*Wallack v. Mayor, etc. of N. Y.,* 3 Hun, 84). The tendency of such places is to attract a crowd, and it is said that they require more or less of governmental supervision and regulation. (*Mayor, etc. of N. Y. v. Eden Musee American Co.,* 102 N. Y. 593).

A statute or ordinance requiring a license for a place should

be sustained where the place and business conducted therein are such as tend to draw crowds that require or may require police surveillance; and where a recorded statement or list of such places is desirable to aid the police department in their duty to prevent the business therein being conducted in a manner injurious to the public welfare.

Police regulations must not be unreasonable nor must they make unjust discrimination against individuals or classes. (Black's Constitutional Law, sec. 371).

By the act in question a room or place may be occupied for dancing on Monday without a license being required therefor, and on Tuesday, if the same persons are engaged in the same dance, in the same room or place, under the instruction of a teacher, such room or place must be licensed or the statute is violated.

It is contended that a person who conducts a public dancing school for minors should be required to obtain a license therefor and that as a condition precedent to obtain the license he should satisfy the licensing authorities as to his good character. That is not the purpose of the act in question. The act in question relates to rooms and places where dancing is taught, and arbitrarily selects such places out of all the places where dancing is engaged in and separately classifies such rooms and places at such times as of a character requiring the exercise of the police power of the State, and leaves unaffected by the act all rooms and places where public dancing is indulged in without the aid of an instructor. It does not appear whether the patrons of dancing academies are minors or adults except that the information states that the relator at his academy taught children in the afternoon and adults in the forenoon and evening. Even if children are instructed at dancing academies or schools the rooms or places are not for that reason in greater danger of becoming the scene of disorder and a menace to the public wel-

22

fare. If the act under consideration otherwise improperly discriminates against public dancing academies as therein defined, then the fact that minors among others attend such academies does not make the act a proper exercise of the police power. We do not mean to deny that the police power can be exercised in a proper case by an act which discriminates against minors or places used wholly by minors, but the act under consideration should not be held valid simply because minors may attend in the rooms or places mentioned. If this act is to be sustained because minors among others attend public dancing academies, then a special license can be required for any store or theater owned by persons whose designation is wholly arbitrary and which would otherwise amount to an illegal discrimination, if minors among others are to patronize it, and if perchance there is some alleged reason for the license that in some way, more or less remote, affects the health, morals or comfort of minors who may so patronize it. The act affects adults as well as minors. It is general in its terms and does not purport to be intended as a protection to minors. The discrimination is based upon a ground that is without reason. There is nothing in the fact of teaching dancing as distinguished from dancing without a teacher that has any injurious effect upon or relation to the morals, health and good order of a community. A discrimination that is made in the exercise of the police power must be based upon some reason. It is true that the reason may not always be a satisfactory one, but it must be a plausible one and have some substantial basis on which to rest. There has not been presented to us a reason why a license should be required of a place or room where dancing is taught that does not apply with even greater force to rooms and places in which dancing is generally indulged in without the aid of a teacher.

The act in our judgment is arbitrary, and unjustly discriminates against public dancing academies as defined therein and so far as it requires a license as therein provided is void.

The act is not a revenue measure and we have not in any way considered the authority of the legislature to require a license for dancing academies as a means of obtaining revenue.

The orders appealed from should be reversed and the relator discharged from custody.

VANN, J. (dissenting) :

The act in question applies only to *public* dancing academies, advertised as such, open to all comers and " in which payment is made for instruction " or admission. The word " academy," as used in the statute, has greater dignity than its definition, for it may be simply one room, but it must be a place, and it may be a large place, where dancing is taught, after public advertisement, to all who are willing to pay for the privilege. Provision is made for licensing such public dancing places, provided compliance is made with all laws, ordinances and building codes, and provided the place for which a license is sought is " a safe and proper place for the purpose," is " properly ventilated and supplied with sufficient toilet conveniences." Public dancing academies are prohibited unless so licensed. No license can be lawfully issued until after due inspection and a written report made not only by an officer appointed pursuant to the act, but also by the " bureaus and departments having supervision over " the building " or the construction thereof," that it complies with all laws applicable thereto. The same precaution is required upon a renewal of the license and additional inspection may be made at any time under the direction of the licensing authority. Liquors may not be sold in or about the premises. The license is forfeited, *ipso facto,* upon the conviction of the proprietor for violating certain sections of the Penal Code and it may be revoked at any time for failure to comply with the act. The license fee is fifty dollars a year and the money paid for licenses is " applied toward the payment of the

salaries of the inspectors." The act has no application to private dancing schools or to public places where dancing is carried on without instruction, or where instruction is given in literature, music, art or any subject except dancing.

All places to which the people generally are invited by public notice or advertisement and which are open to all who will pay for the right of admission, are subject to supervision as to safety, sanitation and decency by the State under the police power exercised by the legislature. Hence, the legislature may provide that public dancing academies, which attract the young and inexperienced of both sexes, shall not be maintained where intoxicating liquors are sold, either in a " room connected therewith or on the same floor of the building." It may further provide that such an academy must comply with building codes and regulations and be " a safe and proper place for the purpose for which it shall be used, properly ventilated and supplied with sufficient toilet conveniences." Current history presents many sad instances of injury and death from the giving away of weak floors and from fires in buildings with poor means of exit. Health requires proper ventilation and both health and decency require proper toilet arrangements in places open to the general public.

Power to legislate upon a subject includes power to prescribe proper methods of enforcement. If the legislature deems inspection a proper remedy, either before or after the place is opened to the public, so as to see that its commands are obeyed, it has the right to require inspection and to provide for the expense by charging, not a restrictive, but a reasonable license fee. Such legislation is not unconstitutional because existing laws may to some extent cover the same subject, for further precautions to promote safety and decency are necessarily within the power of the legislature and adequate inspection is a reasonable exercise of the power. May the sale of liquor on the

premises be forbidden and inspection to see whether liquors are there sold denied?

The act in question relates to the nature of the place and not to the character of the proprietor and the learned counsel for the appellant admits that a license might lawfully be required of a teacher of dancing to minors based on his good reputation. May a safe teacher be required, but not a safe place? What certainly is there that public dancing academies, open to all, may not attract a crowd and with the movement of many feet in unison strain the structure beyond the safety point? If the place is dangerous, or may become so by the use made of it, the legislature has the right to protect the public from the danger. If both sexes congregate in such a place, and especially the young of both sexes, does not public decency require sufficient toilet conveniences? A public dancing academy may have many rooms, or it may be a hall large enough to hold hundreds of people. It may be conducted by a manager without assistance, or with many assistants, the relator had four, and is not the ventilation of a crowded hall part of the public welfare? The legislature has means of information and methods of investigation which the courts have not, and legislation is not to be condemned because the evidence in a particular case does not disclose all the facts pertinent to the subject, or because it is general and may include extreme cases. Instances of hardship cannot be avoided under general rules. I think the act is valid because it tends to promote safety, health and decency in places to which the public are invited, and where many people, mainly the young of both sexes, are apt to congregate. The principle upon which this proposition rests is conceded by all, but we differ as to its application, and I have endeavored to show that it applies to the statute before us. The wisdom of such legislature is no concern of the courts. The concrete question is, may the legislature take proper precautions to see that public places, or

places to which the public are invited, are safe, sanitary and decent?

It is proposed to condemn the act as void on account of arbitrary classification, in that places where dancing is taught are included, while places where dancing is practiced, but not taught are not included. One reason for the classification is that public dancing academies are mainly, and indeed almost exclusively, for the use of young and inexperienced persons, who cannot care for themselves as well as those whose judgment is mature, and whether the reason is sound or unsound, it will support an argument, which is all that is required. (*People ex rel. Hatch v. Reardon*, 184 N. Y. 431; *People ex rel. Farrington v. Mensching*, 187 N. Y. 8). The relator advertised many classes for minors from four to eighteen years of age, and but one for adults. All public dancing academies are treated alike, and the law requires equality only among those similarly situated. (*People ex rel. Williams Engineering & Contracting Co. v. Metz*, 193 N. Y. 148, 165).

I think the order of the Appellate Division should be affirmed and vote accordingly.

CULLEN, Ch. J., EDWARD T. BARTLETT and HISCOCK, JJ., concur with CHASE, J.; WERNER and WILLARD BARTLETT, JJ., concur with VANN, J.

Orders reversed, etc.