The appellant in this case, and the defendant below, is the Public Service Commission of Maryland, created by an Act of the General Assembly of the State, by the Acts of 1910, Chapter 180, page 338, and approved by the Governor on the 12th day of April, 1910. Code of 1912, Art. 23, § 413, etc., Public General Laws.
The appellees and plaintiffs below, are railroad corporations, and were incorporated for the purpose of constructing and operating railroads in the State and elsewhere, as provided by their charters.
The appeal in the case is from an order of Circuit Court No. 2 of Baltimore City, passed on the 18th of July, 1913, making perpetual an injunction which had been granted on the 2nd day of February, 1912, upon application of the plaintiff, enjoining and restraining the appellant from in any matter whatsoever enforcing an order heretofore passed by it on the 5th day of December, 1911, or an order passed on the 27th of January, 1913.
This controversy arose in May, 1911, upon an application of certain citizens and residents of Kent County, Maryland, requesting the appellant, the Public Service Commission of Maryland, to require the Philadelphia, Baltimore and Washington Railroad Company, one of the appellees and the lessee of the Delaware Railroad Company, to rebuild and to operate what is called the "Nicholson Branch" of the Kent County railroad for the purpose of carrying freight in carload lots over this branch of the road. The branch road was constructed sometime prior to 1880, from a point called Worton, a station on the Kent County road, to a point called Nicholson, both points being in Kent County and a distance of three *Page 440 
and seventy-three hundredths (3.73) miles. It is known as a connection or spur of the "Chestertown Branch," of the Kent County Railroad, which latter branch extends from Chestertown, Kent County, on the Chester River to Massey, Kent County, "a point on the line of the Queen Anne's and Kent railroad," from which point the latter road extended and formed a junction with the Delaware Railroad.
The case was heard by the Commission upon petition answer and proof, and by an order of the 5th of December, 1911, it was held that the Nicholson branch of the road should be repaired and reconstructed and freight cars were required to be operated thereon, in the same manner and furnish the same service thereon as prevailed prior to the year 1897 when the operation of the branch was discontinued.
The order of January 27th, 1913, passed by the Commission upon a re-hearing of the case, was simply a denial of the application for a re-modification of its findings and was a re-affirmance of the first order.
The Circuit Court, on the record now before us, and upon the application of the plaintiff below, vacated and set aside these orders, and granted an injunction restraining their execution and enforcement, as will appear from an opinion stating the reasons therefor and the orders set out in the record.
The Court below held, (1) that the "Nicholson Branch" was abandoned in 1897, and it is not within the power of the Public Service Commission by its order to revive the use, by a railroad, of the right of way which had been lost, and (2) that the order of the Commission to rebuild this branch was unreasonable under the facts and circumstances of the case.
As we concur in the conclusion that the "Nicholson Branch," of the road, was abandoned in 1897, and as this finding is decisive of the case, it will not be necessary for us to discuss the second proposition raised on the record.
The salient facts of the case are undisputed, in so far as they reflect upon the question of abandonment, and are briefly these: The Kent County Railroad Company, was incorporated *Page 441 
by the General Assembly of Maryland, under Chapter 148 of the Acts of 1856. Section 12 of the Act provides: "That the said company be and they are hereby authorized to locate and construct a railroad from the waters of the Chesapeake Bay, in Kent County, or some point on the Chester River, in said county, to the north side of Sassafras River, in Cecil County (or to some point on the line of the Queen Anne's and Kent Railroad) as may be deemed most advisable, and also to locate and construct branches from said road to any points in Kent County, as may be deemed advisable."
The Kent County railroad, under the charter granted was built many years ago, from Chestertown on the Chester River to Massey, "a point on the line of the Queen Anne's and Kent railroad" from which point the latter road extended to, and formed a junction with, the Delaware railroad. Sometime in the early eighties or late seventies, the Nicholson branch was constructed, but was never operated for passenger traffic, and its operation was dependent upon the removing of the peach crop of that section, in carload lots. The operation of the road was discontinued in the year 1897, upon the failure of the peach crop, and according to the testimony of all the witnesses, service thereon was never resumed, nor was it operated thereafter as a branch road.
It appears that the properties of the Kent Railroad changed hands from time to time, and at the time the service on the Nicholson branch was discontinued and the branch road abandoned, it belonged to the Baltimore and Delaware Bay Railroad Company, a Maryland corporation.
The last named company was dissolved in 1902, and under the provisions of the Act of 1902, Chapter 82, the Delaware Railroad Company, a corporation of Delaware and Maryland, acquired its property. The Philadelphia, Wilmington and Baltimore Railroad Company, the predecessor of the appellee, the Philadelphia, Baltimore and Washington Railroad, began in 1901 the operation of the road between Massey and Chestertown under an operating agreement with the *Page 442 
Delaware Railroad Company, which continued until March 1, 1910.
By a lease dated February 24, 1910, Act of 1908, Ch. 126, (p. 68), the Delaware Company demised all of its railroad properties in Maryland and Delaware to the appellee, the Philadelphia, Baltimore and Washington Railroad Company, and it appears that the Chestertown branch and the Nicholson branch are both included in the lease.
It seems to be clear, upon the facts in this case that the operation of the branch road here in controversy was abandoned in 1897, when it was owned by the Baltimore and Delaware Bay Railroad Company, and has not been operated by any company since that date either under the operating agreement of 1901, or the lease of February 24th, 1910. On the contrary it appears that all of the companies declined to reconstruct or operate it, and have repeatedly refused upon application of the residents of that section of the county from 1897 to 1910, to resume any kind of service thereon. The evidence shows that it was only operated during "the peach season, for the transportation of freight in carload lots, prior to 1897, and never thereafter; that after its operation was discontinued it was allowed to go to ruin and to now resume the same it would be necessary to entirely reconstruct it, at a large cost. That during the twelve years it was operated, it was done without financial success, and did not pay expenses.
On November 11th, 1910, the directors of the Philadelphia, Baltimore and Washington Railroad Company passed the following resolution:
"Resolved that this company, as lessee, does hereby request the Delaware Railroad Company to authorize the abandonment of the Nicholson Branch, extending from Worton to Nicholson, Maryland, and the removal and disposition of the track material upon the said branch."
On November 21st, 1910, the directors of the Delaware Railroad Company passed the following resolution in response: *Page 443 
"Resolved that in accordance with the request of the Philadelphia, Baltimore and Washington Railroad Company, lessee, the board does hereby authorize the abandonment of the Nicholson branch, extending from Worton to Nicholson, Maryland, and the removal and disposition of the track material upon the said branch."
We have stated, at greater length than usual, the material facts of this case, so that the acts relied upon to effect an abandonment may be clearly seen and that they are of such a decisive character as to constitute and to amount to an actual abandonment of the branch road in question.
For a period of over twelve years, from 1897 to 1910, all of the railroad companies, in charge of the "Chestertown Branch" of the road, not only treated and regarded its former use as abandoned, but refused either to repair, reconstruct or resume service on it. And in 1910, the directors of the appellees, by formal resolution directed the removal and disposition of the track material on this branch.
The rule of law, in cases of this kind, has been settled and announced by this Court, in repeated decisions.
In Vogler v. Geiss, 51 Md. 407, it is said: A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference to time. Glenn
v. Davis, 35 Md. 208.
In Canton Co. v. Balto. Ohio R. Co., 99 Md. 216, it is said: An abandonment is a relinquishment or surrender of rights by one person to another and includes both the intention to abandon and the external act by which the intention is carried into effect. 10 A. E. Ency. of Law, 1198; Lewis on EminentDomain, sees. 596, 861; Whalen v. B. O.R.R. Co.,108 Md. 14; Silver v. Md. Penn. R.R. Co., 110 Md. 517.
If we are right in the views we have expressed, then the Nicholson Branch of this road was abandoned by the Baltimore and Delaware Railroad Company in 1897, four years before the main line to Chestertown was acquired by the *Page 444 
Delaware Railroad Company, and over twelve years before the creation of the appellant as the Public Service Commission of the State.
There is nothing in the Public Service Commission Law, as said by the Court below, that directly treats with the subject of abandonment, and even, if it be assumed that a power is conferred to prevent an abandonment about to occur, clearly there is no power conferred to interfere with an abandonment such as this, that occurred twelve years prior to the passage of the Act of 1910, creating the Commission.
But apart from this, we think, the provision of the charter of the Kent County railroad, authorizing the building of branch roads, is permissive and not mandatory. The language is as follows: "And also to locate and construct branches from said road to any point in Kent County, as may be deemed advisable."
In N.P.R.R. Co. v. Dustin, 142 U.S. 492, MR. JUSTICE GRAY said: "If the charter of a railroad corporation simply authorizes the corporation, without requiring it to construct and maintain a railroad to a certain point, it has been held that it cannot be compelled to complete or maintain its road to that point when it would not be remunerative." People v. R.W. O.R.R. Co.,103 N.Y. 95; Commonwealth v. Fitchburg R.R. Co., 12 Gray, 180;Whalen v. B. O.R.R. Co., 108 Md. 14; Sherwood v.Atlantic D. Rwy. Co., 94 Va. 291; Silver's Case,110 Md. 517.
For the reasons stated, we think the Public Service Commission, the appellant in this case, was without jurisdiction to pass the orders of December 5th, 1911, and of January 27th, 1913, and the Court below was entirely right in granting an injunction restraining their enforcement. Entertaining these views, the decree appealed from must be affirmed.
Decree affirmed, with costs. *Page 445