[L. A. No. 7509. In Bank.—October 29, 1923.]

## HOLLYWOOD CHAMBER OF COMMERCE, Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] PUBLIC UTILITIES—EXTENSION OF STREET-CAR LINES INTO NEW TERRITORY—POWER OF RAILROAD COMMISSION OR OTHER GOVERNMENTAL AGENCY.—Neither the Railroad Commission nor any other governmental agency possesses the power to compel a street railway company to extend its street-car lines at its own expense into a territory which it does not and has never undertaken to serve.

[2] ID.—RAILROADS—CHARACTER OF PROPERTY—CONSTITUTIONAL LAW. Railroads are private property, the owners of which, in common with other property owners, are under the protection of national and state constitutions.

[3] ID.—LIMITS OF DEDICATION—EXTENT OF POWER OF REGULATION.— Within the field of original dedication the regulative authority has ample freedom of action, as a public utility undertaking to supply a given public need submits itself to the regulation and control of public authority with respect to the service it has undertaken; and thus, improved train service may be required, as may switching connections between railroads.

[4] ID.—SERVICE OF STREET-CAR COMPANY TO PUBLIC—EXTENT OF OBLIGATION—FRANCHISES.—The extent of the obligation of a street railway company to serve the public, although not necessarily limited by the street-car lines in operation, is limited and defined by the franchises under which it operates.

[5] ID.—INVALIDITY OF SECTION 36 OF PUBLIC UTILITIES ACT.—Section 36 of the Public Utilities Act (Stats. 1915, p. 115), in so far as it seeks to confer jurisdiction upon the Railroad Commission to

order a street railway company to extend its lines into a new
territory in which it has no franchises, is ineffective for that
purpose and to that extent void.

PROCEEDING in Mandamus to compel the Railroad
Commission to assume jurisdiction over proceeding to com-
pel a street railway company to extend its lines into a new
territory. Writ denied.

The facts are stated in the opinion of the court.

Albert J. Sherer and Robert Young for Petitioner.

Jess E. Stephens, City Attorney, Milton Bryan, Deputy
City Attorney, Hugh Gordon, William W. Clary and Carl
I. Wheat for Respondents.

Frank Karr, Gibson, Dunn & Crutcher and Norman S.
Sterry, *Amici Curiae.*

KERRIGAN, J.—The petitioner seeks a writ of mandate
to compel the Railroad Commission of the state of California
to assume jurisdiction of and to hear and determine a com-
plaint which the petitioner filed with said Commission. In
this complaint the petitioner asked the Commission to order
the Los Angeles Railway Corporation to extend certain of
its street-car lines in the city of Los Angeles into the terri-
tory constituting a part of the city and known as Hollywood.
After hearing argument on the question the Commission
although of the opinion that it had power to make the order
prayed for, dismissed the complaint without receiving any
evidence, on the ground that it would be to the advantage
of all parties and of the public generally if the question of
jurisdiction was determined by this court prior to an ex-
haustive hearing on the merits.

The Hollywood district, as shown by the official map at-
tached to the petition on file herein, occupies a strip of
land about five miles long from east to west and three miles
wide from north to south, lying along the northwesterly
edge, but contiguous to the main residence district, of the
city of Los Angeles. This community, formerly a city of
the sixth class, has a large population, with business houses,
studios, churches, and residences. One main line of the

Pacific Electric Railway Company connects Hollywood with the downtown district of Los Angeles. This line runs north from the downtown district until it reaches the western edge of Hollywood, where it turns west, and from that point it branches, and two lines run approximately parallel and about one-half mile apart through the entire territory from east to west. With the exception of two lines of minor importance and the main line first mentioned, there is no north to south service through this territory or connecting it with the main residence district of Los Angeles.

The Los Angeles Railway Corporation maintains a street-car system throughout the greater part of the city of Los Angeles. Five of its lines which run in a northerly direction approach or touch at various points the southern edge of the Hollywood community, two of them extending into it for a short distance. These five lines are the ones which the Railroad Commission is requested to order the owner thereof to extend, the extensions desired ranging from one-half to two or three miles.

The Pacific Electric Railway and the Los Angeles Railway companies in a brief filed in their behalf contend that the Commission has no jurisdiction to grant the relief prayed, alleging various reasons based on constitutional provisions protecting property rights, including section 1 of article XIV, and article V of the amendments to the Constitution of the United States.

The city of Los Angeles also filed a brief as *amicus curiae* in opposition to the application for the writ of mandate, contending that by reason of various provisions of the constitution of California and of the municipal charter of Los Angeles the Railroad Commission has no jurisdiction to order the extensions here sought, the power in that behalf resting in that municipality.

Under the view which we take of this case it is only necessary for us to consider the question whether any state agency, be it Railroad Commission or municipality, has power to order the extensions here in question.

What is in effect sought to be accomplished by the proceeding before the Railroad Commission is to compel the Los Angeles Railway Corporation to construct ten and one-half miles of double track railroad at its own expense, amounting to a sum in excess of one million and a half dol-

lars, and dedicate such railroad to public use, in a territory which it does not now and has not heretofore undertaken to serve; and it is argued in support of the application that the Commission possesses authority to make such order by virtue of section 36 of the Public Utilities Act (Stats. 1915, p. 115), which confers upon that body very wide powers in the regulation of the service of public utilities. The railway company, on the other hand, urges that obedience to such an order would be tantamount to depriving it and its shareholders of their property without due process of law, with the result of denying to them the equal protection of the laws, in that their property would be taken and appropriated to public use without just or any compensation, while all other classes of persons are guaranteed by the constitution of the state (art. I, sec. 14) that their property shall not be so taken except upon making just compensation.

[1] We entertain no doubt that neither the Railroad Commission nor any other governmental agency possesses such power. [2] It has been repeatedly held by this court and by the supreme court of the United States that railroads are private property, the owners of which, in common with other property owners, are under the protection of national and state constitutions. (*Interstate Commerce Commission* v. *Chicago, G. W. R. Co.*, 209 U. S. 108 [52 L. Ed. 705, 28 Sup. Ct. Rep. 493]; *Chicago, M. & St. P. R. Co.* v. *Wisconsin*, 238 U. S. 491 [L. R. A. 1916A, 1133, 59 L. Ed. 1423, 35 Sup. Ct. Rep. 869]; *Great Northern R. Co.* v. *Minnesota*, 238 U. S. 340 [59 L. Ed. 1337, 35 Sup. Ct. Rep. 753, see, also, Rose's U. S. Notes].) As was said in *Pacific Tel. & Tel. Co.* v. *Eshleman*, 166 Cal. 640, 665 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119, 1128]: "It may not be amiss to point out that the devotion to a public use by a person or corporation of property held by them in ownership does not destroy their ownership and does not vest title to the property in the public so as to justify, under the exercise of police power, the taking away of the management and control of the property from its owners without compensation, upon the ground that public convenience would better be served thereby, or that the owners themselves have proven false or derelict in the performance of their public duty." And in the same case (166 Cal. 699 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac.

1142]), Mr. Justice Sloss said: "I think it cannot be doubted that an order, compelling the owner of private property, against his will, to subject that property to the use of the public or of an individual, amounts to a taking of property. . . . Where the particular property has been dedicated to a public use; where the property, in other words, is employed in a public service, the owner has consented that the public may use his property within the limits to which the dedication extends. Within those limits, the use by the public does not constitute a taking, or, if it be a taking, it is one which has been invited by the owner. But the fact that property has been offered for one public use does not authorize the public to use it for other and different purposes." In accordance with the fundamental principles expressed in these two quotations it was held in *Atchison etc. R. R. Co.* v. *Railroad Com.*, 173 Cal. 577 [2 A. L. R. 975, 160 Pac. 828], that the Railroad Commission had exceeded its powers in ordering a railroad company to construct an extension for a distance of about fifteen miles. This decision clearly establishes the principle that railroads are private property, although devoted to public use, and that the state has no power to order a railroad company, without its consent, to establish a new line of railroad, even though it be for the benefit of the public. (See concurring opinion of Shaw, C. J., in *Atchison etc. Ry. et al.* v. *Railroad Com.*, 190 Cal. 214 [211 Pac. 460].)

[3] Within the field of original dedication the regulative authority has ample freedom of action, as a public utility undertaking to supply a given public need submits itself to the regulation and control of public authority with respect to the service it has undertaken. Thus, improved train service may be required, as may switching connections between railroads. But all of these requirements represent a legal exercise of the police power, under which the state may regulate the service which the public utility has undertaken to give the public. It is obvious that an order compelling extensions and service in a field not embraced within the limits of its enterprise is of a totally different character.

The Railroad Commission, in an opinion filed in connection with its order in this matter, recognizes the principle that a public utility cannot be required to dedicate its property to a new and additional enterprise not theretofore

undertaken by it, but contends that the undertaking to serve is not limited by the franchises which the utility holds, but is a question of fact to be determined from all the circumstances attending the organization of the company.

[4] To us it seems beyond question that the extent of the obligation of the Los Angeles Railway Corporation to serve the public, although not necessarily limited by the street-car lines now in operation, is limited and defined by the franchises under which it operates. To hold otherwise is to disregard the basic principle that railroads are private property devoted to a public use, and would be a departure from the doctrine enunciated in *Atchison etc. Ry. Co.* v. *Railroad Com., supra,* namely, that a railroad company cannot be compelled to dedicate its property to a new service.

The argument of the Railroad Commission seems to be predicated upon the erroneous assumption that a street railway company's public duty is analogous to the duties of a water, gas, electric power, or telephone company, which are required to expand their facilities to meet the demands of a growing community. (*Lukrawka* v. *Spring Valley Water Co.,* 169 Cal. 318 [Ann. Cas. 1916D, 277, 146 Pac. 640]; 1 Wyman on Public Service Corporations, sec. 797.) That there is a distinction between the kind of public utilities just mentioned and a railroad company was clearly recognized in the case of *Atchison etc. Ry. Co.* v. *Railroad Com., supra,* where it was pointed out that gas, water, electric light, or telephone service must, in the nature of things, be brought to the consumer; consequently, the obligation of these utilities to supply a given district carries with it the duty, under reasonable limitations, to extend their mains or lines to a point on the consumer's premises where use can be made of the service. Not so with a railroad company. Before freight or passengers can be transported they must be brought or must come to some point on the line of the railroad. Further, there is a difference between the franchise rights held by these various utilities which emphasizes the distinction between their respective undertakings. A street railroad company must obtain from the municipality a separate franchise covering each of its lines, whereas these other utilities are given franchises to supply the inhabitants of the particular community with water, gas, electricity, or telephone service. It is clear, therefore, that even after

these last-mentioned utilities are ordered to extend their facilities, they still operate within the limits of their original franchises, in which respect they differ from a street railroad company, which, if ordered to make extensions such as are here sought, will be required to serve a territory in which it has not under its franchises the authority to operate its cars. In other words, the franchise rights of a street railroad are important in ascertaining the extent of the company's obligation to serve the public, because they represent the authority which the company has asked for and obtained from the municipality. If the company has obtained authority to extend into a given territory, by securing the franchise rights therein, then it has impliedly undertaken to so extend when reasonably necessary, and if it refuses to do so, it may be ordered by the state to fulfill its obligation. But where, as in the present case, the company does not hold franchises allowing it to voluntarily construct these extensions, there is no justification for saying that the company has impliedly undertaken to extend its lines whenever it should become necessary.

We are of the opinion that the following decisions of public utility commissions in other states lend support to the conclusion which is herein reached: In *Re Union R. Co.* (1916, N. Y.), P. U. R. Ann. 1916F, 773, it was held that the power of the Commission to require an extension of a street-car line depended upon the question whether the company possessed the franchise right to operate over the street on which the extension is desired. In *City of Scranton* v. *Scranton Rys. Co.* (1915, Pa.), P. U. R. 1915C, 890, 893, the Pennsylvania Commission said: "The charter of a street railway company specifies its route and designates the streets upon which it shall be constructed, and also the termini. Before it can construct its route, consent must be obtained from the municipality, which can prescribe conditions under which the franchise is granted. After construction, extensions can only be made by a vote of its stockholders authorizing said extension, and consent of the municipality is again necessary, if permission to make said extension was not granted in the original franchise. To hold, therefore, that the Commission had power to order a street railway company to make an extension beyond points named in its charter would be in effect to compel the stock-

holders to authorize the extension, and to require the company to enter into a contract with the municipality upon any terms which it might impose." Similar results were reached in the cases of *Allied Associations* v. *Philadelphia Rapid Transit Co.* (1917, Pa.), P. U. R. 1917E, 945, *State ex rel. United R. Co.* v. *Public Service Com.* (1917), 270 Mo. 429 [192 S. W. 958, 198 S. W. 872], and *Towers* v. *United Rys. & Elec. Co.*, 126 Md. 478 [95 Atl. 170]. (See note, 2 A. L. R. 983.) While it is true that the organic laws and statutes creating the public service commissions in these several states may be different from our laws, yet these opinions clearly indicate the importance which these commissions attached to the franchises of a street railway company as limiting its undertaking to serve the public.

[5] We conclude, therefore, that section 36 of the Public Utilities Act (Stats. 1915, p. 115), in so far as it seeks to confer jurisdiction upon the Railroad Commission to order a street railway company to extend its lines into a new territory in which it has no franchises, is ineffective for that purpose and to that extent void.

The writ of mandate is denied.

Waste, J., Lawlor, J., Seawell, J., Lennon, J., and Wilbur, C. J., concurred.

Myers, J., being disqualified, did not participate in the foregoing decision.

Rehearing denied.

All the Justices concurred.