# UTAH POWER & LIGHT CO. et al. v. PUBLIC SERVICE COMMISSION et al.

No. 7803.   Decided November 7, 1952.   (249 P. 2d 951.)

See 29 C. J. S., Electricity, sec. 26. Duty of public utility to company desiring service for resale. 43′ Am. Jur., Public Utilities and Services, sec. 46; 112 A. L. R. 773.

*Charles L. Ovard, Gerald Irvine, Van Cott, Bagley, Cornwall & McCarthy* and *Clifford L. Ashton,* Salt Lake City, for plaintiffs.

*Clinton D. Vernon,* Atty. Gen., *Edward W. Clyde,* Salt Lake City, *Udell R. Jensen,* Nephi, for respondents.

WADE, Justice.

Nephi City, a municipal corporation, owns and operates hydroelectric generating plants and a distributing system to furnish electric energy to itself and its inhabitants. The city is unable to generate sufficient energy for its needs and is compelled to purchase from other electrical corporations energy to supplement its supply. Since 1941 the city had been obtaining this power from Telluride Power Company, a public utility with which it had a 10 year contract. As the termination date of this contract approached the city tried to enter into negotiations with the Utah Power & Light Company, a public utility from whom it would be able to get a cheaper rate, to provide the electrical energy it would need in the future. The Utah Power & Light Company refused to enter into such negotiations because it claimed Nephi City was in the territory served by the Telluride Company. Nephi City thereupon filed an application with the Public Service Commission in June, 1950, requesting that the Commission order the Utah Power & Light Company to serve it. The Utah Power & Light Company did not file a protest to this application but the Telluride Power Company intervened and filed a protest. The Commission granted the application and both the Telluride and Utah Power & Light Company filed petitions for rehearing. These proceedings are brought by both the Telluride Power Company and the Utah Power & Light Company to review the amended order of the Commission granting the application.

The Commission found that among the extensive plants and distribution systems owned and operated by the Utah Power & Light Company it

"owns and operates a 44 kv substation located in Santaquin, Utah, known as the Santaquin Substation which is supplied with electrical energy from the company's interconnected system. By means of two 44 kv transmission lines the Santaquin Substation is connected directly with respondent's [Utah Power & Light Co.] Olmstead hydroelectric plant and Hale steam-electric plant, both of which are located east of Orem, Utah in Utah County, which plants have a combined capacity of approximately 70,000 kw. Two 44 kv transmission lines extend south of the Santaquin Substation to the south boundary of Township Eleven (11) South, Range One (1) East, Salt Lake Base and Meridian, near Mona, Utah, where said lines connect with two 44 kv transmission lines owned by Telluride Power Company. By order of the Commission dated June 27, 1946, Utah Power & Light Company was authorized to extend its service south from Mona, Utah, to render electric service to the Thermoid Rubber Company Plant near Nephi, Utah. By agreement with the Telluride Power Company respondent [Utah Power & Light Co.] has leased the two lines extending from Mona south to its switchrack located at the plant of the Thermoid Rubber Company near Nephi, Utah. Under its lease agreement with Telluride respondent may use the leased lines for the transmission of electric energy to serve only Thermoid Rubber Company and Telluride Power Company."

The Telluride Power Company serves San Pete, Sevier, Piute, Garfield, Juab, Millard and Beaver counties. To serve these communities it purchases about half of its power from the Utah Power & Light Company. Both of these companies have adequate power to serve the needs of their areas, including the needs of Nephi City.

In accordance with the holding of this court in *Logan City* v. *Public Utilities Commission,* 72 Utah 536, 271 P. 961, the Commission found that public utilities operated by municipalities are not subject to supervision and regulation by the Public Utilities Commission. It also found that to the extent that Nephi City furnishes electrical energy to itself and its inhabitants it stands in the same position as the Telluride Power Company and may purchase from the

Utah Power & Light Company the power it needs for resale the same as Telluride or any other company so purchasing from it.

The Utah Power & Light Company attacks the lawfulness of the order of the Commission that it sell such power to Nephi City at the nearest point on its inter-connected system where there are facilities of adequate capacity, on the grounds that it violates the Utah State Constitution and the United States Constitution because the order requires it to render service in an area it has never professed to serve with one exception (The Thermoid Rubber Co.) and such requirement constitutes a taking of property without due process of law. In support of this contention it cites *Northern Pac. Ry.* v. *North Dakota*, 236 U. S. 585, 35 S. Ct. 429, 59 L. Ed. 735; *Interstate Commerce Commission* v. *Oregon-Washington R. R. & Navigation Co.*, 288 U. S. 14, 53 S. Ct. 266, 77 L. Ed. 588; *Hollywood Chamber of Commerce* v. *Railroad Commission of Calif.*, 192 Cal. 307, 219 P. 983, 30 A. L. R. 68; *Oklahoma Natural Gas Co.* v. *Corp. Comm.*, 88 Okl. 51, 211 P. 401, 31 A. L. R. 330, P. U. R. 1923B, 823; *Oklahoma Natural Gas Co.* v. *Scott*, 115 Okl. 8, 241 P. 164, P. U. R. 1926B, 67; *Atchison T. & S. F. R. Co.* v. *Railroad Comm.*, 173 Cal. 577, 160 P. 828, 2 A. L. R. 975, P. U. R. 1917B, 336. Conceding that these cases are authorities for the proposition that it is beyond the powers of a public service commission to compel a public utility without its consent to extend lines into or serve areas it has not professed or agreed to serve the question yet remains: Will the Utah Power & Light Company in selling power to Nephi City be performing a service it had not professed to give? This is a question of fact and not of law. *United Fuel Co.* v. *Public Service Comm.*, 105 W. Va. 603, 144 S. E. 723.

Nephi City has offered to construct a transmission line to Mona where the Utah Power & Light Company has adequate facilities to serve it. The Commission found:

"That Utah Power & Light Company under the provisions of Schedule No. 33 offers to sell at wholesale to municipalities, governmental agencies or public service companies, at high voltage, electric energy for resale to inhabitants of cities, towns, or villages. Service under this schedule is available at any point on the company's interconnected system where there are facilities or adequate capacity. Respondent [Utah Power & Light Co.] now has a number of customers receiving service under Schedule No. 33 and represents that it is ready, able and willing to serve additional customers desiring such service provided such customers meet the requirements of this schedule and enter into an electrical service agreement with the company."

By its finding the Commission has determined as a fact that Utah Power & Light Company has held itself out as giving the very service which Nephi City is requiring. By giving such service it is not required to make any expenditures it would not have to make for any customer entitled to its services. As pointed out Nephi City proposes to build a transmission line to a point in Utah Power & Light Company's territory where it has adequate facilities to supply the needs of the city for power. The Utah Power & Light Company is not required by the Commission's order to distribute the energy or provide any other service in the City of Nephi. Although Nephi City is not subject to supervision or regulation by the Public Service Commission, this is not true about the Utah Power & Light Company and the Commission acted within its powers in ordering that company to serve the type of customer within its territory which it has professed to serve, i. e., to sell electric energy at wholesale to a municipality for resale to its inhabitants. There is here no question of inability of the Utah Power & Light Company to perform this service as it is conceded that it can supply all the energy Nephi City may agree to purchase without impairing its ability to serve its other

customers. The energy, according to the Commission's order, is to be sold within the territory served by the Utah Power & Light Company and not elsewhere. Nephi City is to receive the power there and once this energy has entered the transmission line belonging to the city it becomes the property of the city and the Utah Power & Light Company has no further concern about it. As to the agreement under which this purchase of energy is to be made, it will be subject to the supervision and regulation of the Commission because the Utah Power & Light Company and the contracts into which it enters are subject to such regulation regardless of who the other party to the agreement may be.

The Telluride Power Company argues that the Public Service Commission violated the law because it authorized an invasion of its territory in an area where it had dedicated its property and in which it had given satisfactory service without a showing that the public convenience and necessity required such an order. We cannot agree with this contention. Since Nephi City in operating its electrical utility is not subject to the regulation or control of the Commission it could not grant to any public utility the area the city occupies as the exclusive territory of such utility, for to do so would be in effect to regulate the city by hampering its right to obtain power by any means or from anyone it desires. Although the Telluride Power Company might have the right to compete with Nephi City to serve the same customers, if it could get a franchise from the city, this would not make Nephi City's electrical utility a part of its territory so that a sale by any other public utility of wholesale energy to it would be an invasion of Telluride's territory. Of interest on this question are the views expressed by the Public Service Commission of Missouri in *Re Union Electric Co. of Missouri*, 88 P. U. R. (N. S.) 428-433 and that of the Idaho Public Utilities Commission in *Mackay Light & Power Co.* v. *Ashton & St. Anthony Power Co.*, P. U. R. 1920B, page 4,

wherein in answering the argument that a sale of power to a municipality would be an invasion of territory of a public utility which had a certificate of convenience and necessity to serve within the area of that particular village, the Commission said on pages 10-11:

"Complainant insists that defendant, by extending its lines to meet or connect with the proposed transmission line of the village of Arco, even though such extension is entirely within territory allotted to defendant by the Commission, is invading or attempting to invade the territory covered by the certificate of complainant, thus doing, or attempting to do, indirectly what it cannot lawfully do directly; that since there is no demand for electric energy for use within defendant's territory to be delivered at the point where complainant desires to connect its proposed transmission line with the defendant's system, any action, taken by defendant with the intent and purpose of assisting the village of Arco in securing electric energy to be used within territory covered by complainant's certificate, is an unlawful invasion of said territory. On the other hand, it may be argued that since the law allows municipalities to own and operate electric plants and systems, and specifically exempts them from the jurisdiction of the Commission, the Commission, by refusing to permit defendant to furnish electric energy to the village of Arco on the ground that such energy is to be used within complainant's territory, is doing indirectly what the law says it may not do directly,—that is, exercising jurisdiction over the territory within the exclusive control of the municipality. On the broad grounds that the best interests of the public generally, in the respective territories allotted to complainant and defendant by the Commission, will best be served by requiring that all the demand for electric energy in such territory be supplied by the utility authorized to operate in that field or territory, it would appear that the Commission might refuse to permit any current to be carried without the limits of the territory which the Commission, in the exercise of its judgment, has assigned to a particular utility. We cannot, however, escape the conclusion that the legislature, in exempting municipalities from the jurisdiction of the Commission, intended to remove the territory within the municipality from control of the Commission as completely and effectively as if it had taken such territory up bodily and set it down without the confines of the state."

From what we have said it follows that the Commission did not exceed its authority in granting the order.

The order of the Commission is sustained.

McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, Justice.

I dissent, though preferring to concur, knowing the main opinion arrives at a highly desirable result for Nephi citizens, that of obtaining lower power rates. But desired result cannot sustain a circumvention of the letter and spirit of the law and pertinent authorities. To the writer, the opinion cannot survive a logical, careful analysis. It cites the *Logan City* case[1] as its authority. That case, belabored and verbose as it is, simply decided that the commission had no power to *fix rates* that the city is to charge, thus indicating only that municipal *distribution* of power was invulnerable to commission control. The main opinion fails to take into account the personality of the city *as a customer,*—not a distributor. Language in the *Logan* case makes it appear that that case actually is authority for the proposition that municipal *purchase* of power *is* subject to regulation by the commission.

As a purchaser of power, municipal personality should make no magic. There seems to be no valid reason why Nephi, as a customer, should be cast in any role different than Thermoid, a company which, to obtain power from a company franchised in a different area, *was required by the commission* to obtain the consent of the franchised supplier in the Nephi area.

Consumers are to be protected. So are pioneer suppliers in an area who furnish the risk capital, else the theory of public utility administration and regulation fails of purpose. No doubt Telluride's rates are higher in the Nephi area, resulting from complex ratios between transmission distance and volume of consumption, causing higher unit operational and purchase costs. But higher or lower rates

---

[1]*Logan City* v. *Public Utilities Commission*, 72 Utah 536, 271 P. 961.

never have been the sole test of convenience and necessity certification.

We try to be ever mindful of the public weal. At the same time we know that historically and traditionally, public interest has been fostered by inviting and protecting, in reason, the risk capital and the area of its expenditure against economic interlopers. No doubt Telluride's risk capital was expended partly to furnish cities with power as well as others, and the spirit of our statutes contemplates protection in the franchised area. But the main opinion takes from Telluride one of its customers, in the area which its certificate presumes to protect it, and not only gives that customer to a utility franchised elsewhere, but forces the foreign utility to accept the invading customer, giving rise to legitimate contitutional questions assertable by the latter utility.

Any future order of the commission, denying other cities in the area the privilege of connecting their lines at Mona, would be highly inconsistent with the decision here, until all ability of Utah Power to furnish power at Mona was exhausted. It takes little imagination, if the commission be consistent, to visualize a situation where, by a series of coparatively short connections, from Nephi backwards to one city after another, Telluride could lose every municipal customer in its area, and possibly its business to a point where other customers, less fortunate than the cities inoculated against control, would suffer from higher rates, poor service or no service at all.

Thus, by reaching a desired result, we may be rendering disservice unjustified by statute or authority, not only to Telluride, franchised distributor in the area, and its risk capital, but to a large group of consumers, resulting in an inversion of the spirit and a perversion of the letter of laws designed to protect both distributor and consumer.

WOLFE, C. J., having disqualified himself does not participate herein.