EMPIRE ELECTRIC ASSOCIATION, INC., Plaintiff,

v.

PUBLIC SERVICE COMMISSION of Utah, Milly O. Bernard, Olof E. Zundel, and Kenneth Rigtrup, Commissioners; and Atlas Minerals—Division of Atlas Corporation and Utah Power and Light Company, Defendants.

No. 15866.

Supreme Court of Utah.

Dec. 19, 1979.

Elliott L. Pratt of Clyde & Pratt, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., Arthur A. Allen, Jr., Asst. Atty. Gen., Grant MacFarlane, Jr. of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for Atlas.

Sidney G. Baucom and Robert Gordon, Salt Lake City, for Utah Power.

STEWART, Justice:

Petitioner, Empire Electric Association, Inc. (hereafter "Empire"), seeks reversal of the Public Service Commission's order that Utah Power & Light Company furnish power to a mine site within Empire's certificated service area by extending an existing distribution line. We affirm.

Respondent Atlas Minerals ("Atlas"), a division of Atlas Corporation, conducts mining operations in the States of Utah and Colorado. In 1977 it opened a uranium mine, known as the Dunn Mine, in San Juan County. The Dunn Mine operation requires three-phase electric service at the portal and at the bore hole of the mine. This type of service is viewed by the utilities as temporary or "indeterminate" service because mineral reserves are limited at any specific site and therefore the duration of electric service needs is uncertain.

The site of the Dunn Mine is entirely within the geographic electric service area certificated to Empire in 1971. It is approximately one mile south of the boundary line which separates the respective service areas of Empire and respondent Utah Power & Light. The closest three-phase distribution line of Empire is located about six miles from the portal of the mine. Utah Power & Light has an electric distribution line which is located within Empire's service area approximately one mile from the mine portal. This line existed prior to Empire's certification, and the customers then served from the line were specifically excluded from the area certificated to Empire.

In making inquiries regarding its need for electric service at the Dunn Mine, Atlas learned that, pursuant to the two utilities' respective tariffs and extension policies, Utah Power would supply service to the mine without advance construction payment by Atlas, but with a guaranteed annual minimum bill, and Empire would supply such service upon an advance construction payment in excess of $84,000. The monthly charges were not expected to differ materially. However, Utah Power informed Atlas that it could not provide service to the mine without approval of the Public Service Commission. Atlas proposed to Empire that if it wished to serve the mine it interconnect with Utah Power's line and purchase Atlas' power needs from Utah Power. Empire, however, is bound by contract to

purchase all its power requirements from a Colorado corporation and therefore was not free to enter into such an arrangement.

In August 1977 Atlas filed a petition with the Commission alleging that it was unable to obtain a commitment from either Empire or Utah Power to provide electric service at the mine site unless it advanced the cost of 6.25 miles of new distribution line, which requirement Atlas further alleged, in light of the existence of nearby electrical facilities, was unnecessary, wasteful, inefficient, and unreasonable. Atlas objected to the construction of the extension proposed by Empire as an unnecessary and wasteful duplication of electrical facilities.

The Commission issued an order to show cause requiring the parties involved to attend a hearing to resolve the issue of who should provide Atlas with electric service. Following the hearing the Commission issued its Report and Order directing Utah Power to provide service from its existing transmission line.

In petitioning this Court for review of the Commission's order in the present case, Empire argues that the order was unlawful and arbitrary for the following reasons:

(a) In an earlier contested certification hearing involving Utah Power as protestant, Empire was awarded the area exclusively, specifically reserving to Utah Power two existing customers only, for whom the Utah Power distribution line had been constructed in the 1950's.

(b) The previous order was founded upon a holding that Utah Power, not having served the area since the 1950's, could not now attempt to serve without applying to the Commission for additional authority based upon public convenience and necessity, and this requirement has not been met.

(c) Without such a certificate of public convenience and necessity, § 54–4–25 U.C.A. (1953), as amended, renders the order unlawful.

(d) There is no evidence nor finding of the required public convenience and necessity.

(e) The evidence only shows a convenience to one individual—Atlas. Such evidence and finding is legally insufficient.

(f) There is no claim in the Petition for Order to Show Cause, no evidence in the record, and no finding or conclusion in the Report and Order that Empire is not performing its utility obligations.

(g) There is no statutory authority for an Order to Show Cause proceeding brought under §§ 54–7–9 and 54–3–1 U.C.A. (1953), as amended, to deprive Empire of its certificate rights.

The Commission, in its Conclusions of Law, held that Utah Gas Service Co. v. Mountain Fuel Supply Co., 18 Utah 2d 310, 422 P.2d 530 (1967), is controlling. The facts of Utah Gas are similar to those before us. In that case the Public Service Commission had previously authorized Utah Gas to extend its distribution system into "the counties of San Juan, Grand, and Uintah where there is a demand for natural gas service . . . ." Utah Gas had the franchise, but Mountain Fuel had a natural gas pipeline located within a mile of the community of Bonanza in Uintah County. The Commission authorized service by Mountain Fuel, and Utah Gas appealed, contending that the rights conferred by its certificate were exclusive. This Court affirmed the Commission's action.

The Commission properly relied in the present matter on Utah Gas, supra. In affirming the order of the Commission in that case, this Court made the following points which are pertinent here.

In proceedings before an administrative agency, it is requisite primarily that a party be given the opportunity to prepare and present his case and to have an adjudication in conformity with the law. A decision of the Commission will therefore not be overturned because of claimed procedural irregularities when due process requirements have been met. See Fuller-Toponce Truck Co. v. Public Service Commission, 99 Utah 28, 96 P.2d 722 (1939). Empire's objections to the order to show cause proceeding do not support a claim of substantial

prejudice of its rights, since Empire was allowed time for full preparation and presentation of its case.

The second point made by *Utah Gas* is that utility companies have been granted monopolistic franchises and subjected to regulation because duplication of facilities by competing entities would be wasteful and impractical. The Public Service Commission has been charged with the responsibility of regulating utilities in the public interest and has been endowed with "considerable latitude of discretion" to carry out that responsibility. The Court stated that the Commission's responsibility "is a continuing one which should not be hampered or impaired." Despite the prior granting of a franchise to one company, therefore, it may not be assumed that the franchise is permanent and exclusive for the indefinite future when circumstances require reassessment. In deciding between rival applicants in *Utah Gas*, the Court found it significant that the defendant already had a supply of natural gas in a pipeline that passed within about a mile of the town requiring service, and the plaintiff did not possess such an "advantage." A nearby pre-existing source of power was also present in the instant case.

Finally, *Utah Gas* held that the findings and decision of the Commission "are endowed with a presumption of validity and correctness." Its decision will not be reversed on appeal unless, when the evidence is viewed in the light most favorable to sustaining the order, there is no reasonable basis for the action of the Commission. See *Mulcahy v. Public Service Commission*, 101 Utah 245, 117 P.2d 298 (1941).

The contentions made by petitioner Empire in the present case do not support a finding of arbitrariness on the Commission's part. As to those contentions, we make the following observations. As the Commission noted in its findings, although there was reference to an "exclusive" territory in the findings of fact accompanying the order awarding Empire's certificate, neither the conclusions of law nor the order itself mention a grant of exclusive territory. A certificate of convenience and necessity does not in and of itself confer exclusive rights. Nor is a prior decision as to the issuance of a certificate res judicata and thereafter binding upon the Commission, see *Mulcahy, supra*. With regard to Utah Power's authority to furnish service as represented by a certificate of public convenience and necessity, the Commission found that Utah Power presently holds certificates for most of the State of Utah; this would presumably include the recognized but limited authority to furnish power from its transmission line in question here. As the Commission stated in its conclusions of law:

> [T]he concept of "public convenience and necessity" should be considered in light of current and changing circumstances. If the end goal of providing adequate services at reasonable rates is not best subserved by a utility granted a prior certificated area, then "public convenience and necessity" dictates modification of the prior grant of authority. The development of our natural resources, which frequently are located in remote and sparsely populated areas of our State, should not be hindered by a blind adherence to previously certificated boundary lines where a utility in an adjoining service area already has facilities in place to provide continuous and adequate service at reasonable rates.

It is not solely Atlas' interests that were considered by the Commission; it based its order on the larger issue of unnecessary economic waste in what it termed the "cost-squeeze environment of today," as related to the development of the State's natural resources.

Finally, it is not necessary to make findings that the present certificate holder is not performing its utility obligations when another applicant is awarded the right to serve an area. See *Utah Light & Traction Co. v. Public Service Commission*, 101 Utah 99, 118 P.2d 683, 690 (1941), where the Court stated:

It is vigorously asserted that the basis of the utilities regulation act is controlled monopoly, and that no new entry should be permitted in a field in which an existing utility is operating, unless and until such utility refuses to furnish any new or further service ordered by the commission, and then only to the extent that the existing utility is not willing to undertake the service. But such is not the foundation upon which our act for the control of public utilities is founded, nor should it be a primary governing principle in the action of the commission.

It was for the Commission to make a determination based on the circumstances of this particular case. The situation surrounding the original granting of the franchise to Empire was unique in that a limited exclusion was made for Utah Power's existing transmission line and customers served by it. Atlas' request for power from Utah Power thus presented the Commission with an unusual situation. To allow the duly certificated franchise holder to provide the needed electrical service would result in the very duplication of facilities and economic waste that utility regulation is designed to avoid. Allowing service to be provided by another utility not certificated within the area, but in very close proximity thereto, at a substantial cost savings is properly within the power of the Commission when there is no showing of harm to the losing utility, other than the loss of a small amount of revenue, and the public convenience and necessity supports the granting of the authority.

We have reviewed the findings of the Commission and find them to be sufficient to support its order directing Utah Power & Light to serve Atlas at its Dunn Mine site.

CROCKETT, C. J., and MAUGHAN and HALL, JJ., concur.

WILKINS, J., does not participate herein.