WHITE RIVER SHALE OIL
CORPORATION, Plaintiff,

v.

PUBLIC SERVICE COMMISSION OF
UTAH; Brent H. Cameron, Chairman;
David R. Irvine, Commissioner; James
J. Byrne, Commissioner, Defendants.

UTAH POWER & LIGHT
COMPANY, Plaintiff,

v.

PUBLIC SERVICE COMMISSION OF
UTAH; Brent H. Cameron, Chairman;
David R. Irvine, Commissioner; James
J. Byrne, Commissioner, Defendants.

Nos. 19848, 19849.

Supreme Court of Utah.

May 2, 1985.

F. Robert Reeder, Val R. Antczak, Susan R. Poulter, Salt Lake City, for White River Shale.

Robert Gordon, Helen J. Edwards, Thomas W. Forsgren, Rosemary Richards, Salt Lake City, for Utah Power & Light.

David L. Wilkinson, Atty. Gen., Craig R. Rich, Steven Schwendiman, Asst. Attys. Gen., Salt Lake City, for Public Service Com'n of Utah, et al.

Gary A. Dodge, Robert S. Clark, Lynn Mitton, Sandy, Dale Kimball, Salt Lake City, for Deseret Generation Trans.

Gary Sackett, Salt Lake City, for Mountain Fuel.

George E. Mangan, Machelle Fitzgerald, Roosevelt, for Moon Lake.

HALL, Chief Justice:

Plaintiffs White River Shale Oil Corporation (White River) and Utah Power and Light Company (UP & L)[1] appeal an order

---

1. Utah Power & Light Co. has provided no citations to the record in its brief. Utah R.Civ.P. 75(p)(2)(2)(d) (superceded on January 1, 1985, by Utah Rules of Appellate Procedure 24(e) and 24(k)) requires that, on appeal, the party must make a concise statement of facts and citation of the pages in the record where those facts are supported. Failing that, this Court will assume the correctness of the judgment below. *State v. Steggell,* Utah, 660 P.2d 252 (1983). We note,

of the Public Service Commission (PSC) directing UP & L to discontinue construction of a transmission line pending a full expedited hearing to determine which of two public utilities, Moon Lake Electric Association, Inc. (Moon Lake) or UP & L, should properly provide electric service to White River. We affirm.

Moon Lake is a small, member-owned rural electrical cooperative. UP & L is an investor-owned public utility. Both Moon Lake and UP & L hold certificates of convenience and necessity from the PSC to provide electricity to various areas of the State of Utah.

Prior to 1970, Moon Lake and UP & L were involved in various disputes centering around the provision of electric power to Duchesne and Uintah counties. These disputes were resolved by a mutual agreement dated December 2, 1970. The PSC approved the agreement and issued a certificate of convenience and necessity which established and defined exclusive and joint service areas. Among other things, Moon Lake was exclusively authorized to serve a portion of Uintah County which contained the White River Shale Oil Project.

Since 1974, Moon Lake has been exclusively serving White River's electrical needs and is now serving White River with a 13.2 kv line. In 1982, in anticipation of expanded power requirements by White River, Moon Lake and White River began negotiations on the terms of an extension of a 138 kv line from the Bonanza power plant, located approximately ten miles northwest of the project, to the White River site, an estimated fourteen miles of new line. However, in August of 1983, White River broke off all negotiations with Moon Lake and began to make arrangements to obtain electrical service from UP & L.

UP & L provides no service to areas near White River and has no existing transmission facilities which could provide service to White River. Therefore, UP & L proposed to construct a transmission line from its existing Vernal substation to the nearest point within its territory to White River, a distance of approximately forty miles. White River would then build a transmission line from its project site, across the exclusive service territory of Moon Lake, into UP & L service territory and connect with UP & L's newly constructed line, a distance of approximately three miles.

Upon learning of UP & L's intent, Moon Lake filed a complaint with the PSC seeking to prevent UP & L from invading Moon Lake's area to serve White River. After extensive briefing by the parties and a full hearing, the PSC issued a cease and desist order on December 21, 1983. The order directed UP & L to cease construction of the transmission line extension. The PSC noted that if UP & L wished to proceed, it would have to file an application for a certificate of convenience and necessity with the PSC. The PSC would then consider the matter.

UP & L and White River requested a rehearing, which request the PSC acceded to. On February 24, 1984, the PSC affirmed its earlier cease and desist order, but also ordered an expedited hearing on the merits. Before the hearing could be had, UP & L and White River filed a petition for certiorari with this Court. A writ of certiorari was issued on March 28, 1984.

On appeal, White River and UP&L argue, among other things,[2] that the PSC did not have the authority to issue a cease and desist order on the facts of this case since UP&L was attempting to provide service within its exclusively certificated area. White River and UP&L also contend that the PSC in fact has no authority to issue a cease and desist order, arguing that the legislative delegation to the PSC of the authority to issue cease and desist orders is unconstitutional.

however, that White River has raised generally the same issues on appeal and has properly cited to the record. Therefore, the Court has addressed the merits of the appeal.

2. In light of our resolution of the issues discussed below, we need not address the remaining issues raised by plaintiffs.

■ The PSC has been charged with the responsibility of regulating utilities in the public interest and has considerable latitude of discretion to carry out that responsibility.[3] Under the authority of U.C.A., 1953, § 54-4-1 (Supp.1983),[4] the PSC has the power to issue orders regarding any matter within its jurisdiction.

■ The PSC clearly has the specific authority to issue cease and desist orders under U.C.A., 1953, § 54-7-4.5 (Supp. 1983).[5] Plaintiffs, however, contend that this delegation of quasi-judicial authority to the PSC by the legislature was done without setting standards to guide its exercise and safeguards to protect the rights of the affected parties. Therefore, plaintiffs contend that section 54-7-4.5 is an unconstitutional delegation of judicial authority.

■ This argument is without merit. It has long been established that it is within the authority of the legislature to confer upon the commission the power to perform functions of a judicial or quasi-judicial nature and to enforce the law.[6] As long as this delegation of authority is accompanied by adequate guiding standards and procedural safeguards to ensure that decision making by the commission is not arbitrary and unreasoned, it is a constitutional delegation.[7]

■ The provisions of the entire Public Utilities Act, U.C.A., 1953, §§ 54-1-1 to -11-10 (1974 & Supp.1983), must be considered in determining whether there are sufficient guidelines established by the legislature.[8] However, the primary sources of guidance are the declarations of legislative goals and policies which an agency is to apply when exercising its delegated powers.[9]

■ These declarations need only be as specific as the circumstances warrant.[10] The legislature need not lay down a detailed and specific set of guidelines which covers every conceivable problem that might arise in implementing the legislation. It is sufficient if there are general policies and standards articulated which provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances.[11]

■ It is undisputed that the PSC has been charged with the responsibility of regulating utilities in the public interest and that it has the necessary expertise to do so. Broad standards such as "reasonable," "unnecessary" and "public convenience and necessity" have been held to be sufficient as standards even though incapable of precise definition.[12] "Public interest" certainly falls within this class of standards and,

---

3. *Empire Elec. Ass'n v. Public Serv. Comm'n,* Utah, 604 P.2d 930, 933 (1979); *Utah Gas Serv. Co. v. Mountain Fuel Supply Co.,* 18 Utah 2d 310, 313, 422 P.2d 530, 533 (1967).

4. U.C.A., 1953, § 54-4-1 (Supp.1983) states:
The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public utility in this state, and to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction; provided, however, that the department of transportation shall have jurisdiction over those safety functions transferred to it by the Department of Transportation Act.

5. Section 54-7-4.5 states in pertinent part: "In addition to its powers provided by law, the public service commission may on its own motion or on motion of any party, issue subpoenas, cease and desist orders...."

6. *Wycoff Co. v. Public Serv. Comm'n,* 13 Utah 2d 123, 126, 369 P.2d 283, 285 (1962).

7. *See Lloyd A. Fry Co. v. Utah Air Conservation Comm.,* Utah, 545 P.2d 495 (1975). *See also* K. Davis, 1 Administrative Law Treatise, §§ 3.10, 3.15 (2d ed. 1978 & Supp.1982).

8. *See Lloyd A. Fry Co., supra* note 7.

9. *Adams v. North Carolina Dep't of Natural and Economic Resources,* 295 N.C. 683, 698, 249 S.E.2d 402, 411 (1978).

10. *Id.*

11. *Id. Accord State v. Boynton,* Me., 379 A.2d 994, 995 (1977).

12. *Aeronautical Radio, Inc. v. United States,* 335 F.2d 304, 307 (1964); *Lloyd A. Fry Co., supra* note 7, at 500.

when read in light of the entire Public Utilities Act, is not so broad as to result in an improper delegation of authority.

■ Furthermore, the legislature has provided a high degree of protection to guard against arbitrary exercise of power by the PSC. In all actions before the PSC, any party has the right to prepare and present its case.[13] The commission's decisions are required to be supported by written findings.[14] Procedures are provided for rehearings,[15] and, finally, any party aggrieved by a decision may apply to this Court for a writ of certiorari.[16] From the above discussion, it is clear that the delegation of authority to the PSC to issue cease and desist orders is accompanied by adequate guiding standards and procedural safeguards. Thus, the delegation is constitutional.

UP&L and White River also contend that the PSC had no authority to issue a temporary cease and desist order given the facts of this case. Plaintiffs essentially argue that UP&L has the right and duty to deliver power to White River to be used in Moon Lake's exclusively certificated area as long as that power is delivered within UP&L's certificated area (point of delivery argument). Plaintiffs rely primarily on *Utah Power & Light Co. v. Public Service Commission (Nephi)*[17] for this assertion.

*Nephi* is inapposite to the facts of this case. In *Nephi*, the city, a municipal corporation, owned and operated its own system to distribute electrical energy to city inhabitants. For a ten-year contract period, the city purchased power from Telluride Power Company (TPC) within whose exclusive service area Nephi City was located. At the end of the contract term, Nephi attempted to negotiate with UP&L to purchase power,

offering to build a transmission line into UP&L's territory. UP&L refused since Nephi was within TPC's territory. Nephi then requested the PSC to order UP&L to serve the city. After a full hearing, the commission ordered UP&L to sell electricity to Nephi at the nearest point on UP&L's interconnected system. Both UP&L and TPC appealed.

This Court upheld the findings of the PSC, noting that the commission had ordered UP&L to provide only those services it professed to provide: UP&L held itself out as ready, willing and able to sell *wholesale* power to *municipalities* at any point on UP&L's interconnected system where there were adequate facilities.

It is clear that the Court did not rely on the "point of delivery" argument in *Nephi*, but on Nephi's status as a municipality:

Since Nephi City in operating its electrical utility is not subject to the regulation or control of the Commission it could not grant to any public utility the area the city occupies as the exclusive territory of such utility, for to do so would be in effect to regulate the city by hampering its right to obtain power by any means or from anyone it desires.[18]

■ White River does not stand in the same position as Nephi City. White River is neither a municipality, and thus totally exempt from any regulation by the PSC either directly or indirectly,[19] nor a wholesale purchaser of power. White River, like any general consumer, is subject to regulation by the PSC in the sense that the PSC may determine which utility may sell it power.[20] UP&L and White River's reliance on *Nephi* is thus totally misplaced, and the

---

13. U.C.A., 1953, § 54–7–10 (Supp.1983). *See also* U.C.A., 1953, §§ 54–7–1 to –3 (1974 & Supp. 1983).

14. U.C.A., 1953, § 54–7–5. *See also* Common Cause of Utah v. Public Serv. Comm'n, Utah, 598 P.2d 1312, 1314 (1979).

15. U.C.A., 1953, § 54–7–15 (Supp.1983).

16. U.C.A., 1953, § 54–7–16.

17. 122 Utah 284, 249 P.2d 951 (1952).

18. *Id.* at 289, 249 P.2d at 953.

19. *See id.* at 290, 249 P.2d at 954.

20. *See Capital Elec. Power Ass'n v. Mississippi Power & Light Co.*, Miss., 218 So.2d 707, 714 (1968) (a customer does not have a right to choose what utility to purchase power from).

PSC properly rejected it as providing binding precedent on the facts herein.

It is important to note here that the PSC has considerable latitude of discretion to enable it to regulate utilities in the public interest.[21] Any order of the PSC, be it exclusive certification or otherwise, is to be construed as passing only upon the issues before it.[22] As to the parties involved, the commission retains continuing jurisdiction to make such subsequent orders, after all due process requirements have been met, as the factual situation before it and the public interest may require.[23] Therefore, despite the prior grant of a franchise to one company, it cannot be assumed that the grant is permanent and exclusive for the indefinite future when circumstances require reassessment.[24]

In any event, under U.C.A., 1953, § 54–4–2,[25] the PSC clearly has the authority to order an investigation and hearing on a utility action whenever the commission feels the public interest will be thereby served. In this case, ordering a full expedited hearing on the question of which utility, UP&L or Moon Lake, should serve White River was well within the PSC's authority.

Finally, in this appeal, UP&L and White River ask this Court to rule on matters not as yet considered or resolved by the PSC. At this stage of the proceedings, this Court does not have the jurisdiction to consider those matters. The Court can review only the findings of the commission to support its cease and desist order to determine whether there is a reasonable basis for the commission's action.[26] The commission has found that the public interest will be served by requiring UP&L to cease construction of the transmission line to White River pending a hearing on the merits and has so ordered. There is ample evidence in the record to support this finding. The PSC, however, has made no ruling on the question of which utility should serve White River. Without specific findings of fact and conclusions on the merits of the case, this Court cannot and will not address those issues.

In light of our disposition of the matters above, we need not discuss plaintiffs' further contentions. The order of the Public Service Commission is affirmed.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

**21.** *Utah Gas, supra* note 3.

**22.** *Id.* at 314, 422 P.2d at 533.

**23.** *Id.*

**24.** *Empire Electric, supra* note 3.

**25.** U.C.A., 1953, § 54–4–2 states:

Whenever the commission believes that in order to secure a compliance with the provisions of this title or with the orders of the commission, or that it will be otherwise in the interest of the public, an investigation should be made of any act or omission to act, or of anything accomplished or proposed, or of any schedule, classification, rate, price, charge, fare, toll, rental, rule, regulation, service or facility of any public utility, it shall investigate the same upon its own motion, and may fix a time and place for a hearing thereof with notice to the public utility concerning which such investigation shall be made, and upon such hearing shall make such findings and orders as shall be just and reasonable with respect to any such matter.

**26.** U.C.A., 1953, § 54–7–16. *Empire Electric, supra* note 3.