**CITIZENS COOP GIN, et al., Appellants,**

**v.**

**GENERAL TELEPHONE COMPANY OF the SOUTHWEST, et al., Appellees.**

**No. 3–86–007–CV.**

Court of Appeals of Texas, Austin.

April 15, 1987.

Brian P. Quinn, Don R. Richards, McWhorter, Cobb and Johnson, Lubbock, for South Plains Telephone Co-op., Inc.

William W. Blackledge, Blackledge Law Offices, Lubbock, for Citizens Co-op. Gin.

Angela M. Demerle, Austin, for General Telephone Co. of Southwest.

Jim Mattox, Atty. Gen., Carole J. Vogel, Asst. Atty. Gen., Austin, for Public Utility Comm'n of Texas.

Before SHANNON, C.J., and BRADY and ABOUSSIE, JJ.

PER CURIAM.

Appellants, Citizens Coop Gin and South Plains Telephone Cooperative, Inc., appeal from a judgment of the district court of Travis County which reversed an order of appellee, Public Utility Commission,[1] and remanded the matter for further proceed-ings. We will affirm the order of the district court.

South Plains and appellee, General Telephone Company of the Southwest, are retail public utilities that provide telephone service in Hockley County, Texas, pursuant to certificates of public convenience and necessity issued by the Commission. Tex. Rev.Civ.Stat.Ann. art. 1446c, § 50 *et seq.* (Supp.1987). The Gin is located within an area singly certificated to General Telephone and is approximately one-half mile west of the area singly certificated to South Plains. General Telephone has provided the Gin with telephone service from 1951 until at least 1980.

In March 1978, the Gin requested from General Telephone upgraded service consisting of two, two-wire private line circuits to use for a business one-party line and a TELCOT circuit. TELCOT is an interstate data service by which the Gin proposed to provide its customers with cotton-marketing information and selling capabilities. The TELCOT system could not be used on the multi-party telephone circuit then available from General Telephone. General Telephone agreed to provide the upgraded service if the Gin paid aid-to-construction charges of $5,760 in accord with the telephone company's tariff filed with the Commission. The Gin rejected this offer.

Prior to the rejection, the Gin requested two business one-party circuits and two residence one-party circuits from South Plains. South Plains responded that it could not accommodate the Gin because it was not located within South Plains' certificated area of service. The Gin then proposed to install telephone distribution lines from the Gin to a point within the South Plains' certificated area. South Plains agreed to the proposal and extended its equipment six thousand feet to meet the Gin's. The Gin installed several thousand feet of buried cable from its premises, along a farm-to-market road, to a point just within the South Plains' area. On September 9, 1978, South Plains connected the

---

1. The Commission did not appeal from the district court's judgment. In a subsequent order, the Commission expressly overruled its decision entered in the cause before this Court.

equipment and began to provide telephone service to the Gin.

Subsequently, General Telephone filed with the Commission an application for a cease and desist order on the basis that South Plains was providing service beyond its certificated area in violation of the Public Utilities Regulatory Act (PURA), Tex. Rev.Civ.Stat.Ann. art. 1446c, §§ 50, 51 and 54 (Supp.1987). In its order of January 31, 1980, the Commission denied General Telephone's request, granted an exception to General Telephone's certificate of public convenience and necessity and stated that South Plains should continue to furnish telephone service to the Gin. After the Commission overruled its motion for rehearing, General Telephone filed its petition for judicial review in the district court of Travis County. The court reversed the Commission's order and remanded the matter for further proceedings.

In its first point of error, South Plains argues that the district court erred in reversing the Commission's order because the agency's decision was not arbitrary, capricious or unreasonably discriminatory. A court may reverse an agency decision if it violates constitutional or statutory provisions; exceeds the agency's authority or is arbitrary, capricious or characterized by an abuse of discretion. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(e) (Supp.1987); *Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex.1984); *Public Utility Comm'n of Texas v. South Plains Electric Coop., Inc.*, 635 S.W.2d 954 (Tex.App.1982, writ ref'd n.r.e.). South Plains contends that the Commission's order is within its broad authority to achieve the statutory purpose of making available adequate and efficient telecommunications, pursuant to PURA §§ 16 and 18 and that South Plains did not need prior approval from the Commission to serve the Gin because General Telephone's service was inadequate. This contention is similar to that raised in point of error three; therefore, we will combine our discussion of points one and three.

Section 50 of PURA provides

(1) No public utility may in any way render service directly or indirectly to the public under any franchise or permit without first having obtained from the commission a certificate that the present or future public convenience and necessity require or will require such installation, operation, or extension.

(2) Except as otherwise provided in this article no retail public utility may furnish, make available, render, or extend retail public utility service to any area to which retail utility service is being lawfully furnished by another retail public utility on or after the effective date of this Act, without first having obtained a certificate of public convenience and necessity that includes the area in which the consuming facility is located.

Section 51, in pertinent part, establishes exceptions to the above certification requirements for

(1) an extension into territory contiguous to that already served by it and not receiving similar service from another public utility and not within the area of public convenience and necessity of another utility of the same kind;

(2) an extension within or to a territory already served by it or to be served by it under a certificate of public convenience and necessity;

*See generally* Comment, *Certificates of Convenience and Necessity Under the Texas Public Utility Regulatory Act*, 28 Baylor L.Rev. 1115, 1122–30 (1976).

■ We conclude that the Commission exceeded its authority, pursuant to § 50 and § 51, by permitting South Plains to provide telephone service to the Gin. South Plains could not, and did not, extend its lines into General Telephone's certificated area. Instead, the Gin is receiving telephone service at a point within South Plains' certificated area by means of private distribution lines running from the point of delivery to the user within General Telephone's certificated area. South Plains does not argue that the point of delivery controls. *See White River Shale Oil Corp. v. Public Service Comm'n of Utah*, 700 P.2d 1088, 1092 (Utah 1985); *Capital Elec-*

*tric Power Ass'n v. Mississippi Power & Light Co.*, 218 So.2d 707 (Miss.1968). Section 50(2) defeats such an argument by its requirement that the certificate of public convenience and necessity include "the area in which the consuming facility is located." The statute requires certification at the consumer level and not at the level of production and transmission. *Certificates of Convenience and Necessity, supra* at 1125. South Plains does not dispute that the Gin is located within General Telephone's certificated area or that General Telephone is lawfully furnishing service within its certificated area. *See City of Brownsville v. Public Utility Comm'n of Texas*, 616 S.W.2d 402, 405–6 (Tex.Civ.App. 1981, writ ref'd n.r.e.). Section 50(2) prohibits extension of service into that area unless the utility "furnish[ing], mak[ing] available, render[ing] or extend[ing] the service first obtains a certificate of public convenience and necessity." Section 51(a)'s exceptions apply only to extensions into contiguous territory not within an area certificated to another utility. Clearly South Plains' extension of service to the Gin does not fall within one of these exceptions.

■ Nevertheless, South Plains argues that prior approval is unnecessary because its action falls within an exception to certification created by § 16(a), § 61(1) and § 62(b). Section 16(a) is a broad delegation of authority to the Commission "to regulate and supervise the business of every public utility . . . and to do all things necessary and convenient to the exercise of this power and jurisdiction." *Kee v. Baber*, 157 Tex. 387, 303 S.W.2d 376, 380 (1957). Sections 61 and 62 fall within the scope of § 16. The construction of these provisions that South Plains proposes does not create an exception to the certification requirements of § 50. Section 61(1) provides that, after notice and hearing, the Commission may order a public utility to provide specified improvements if its service is inadequate and the improvements are reasonable. Section 62(b) provides, "When the certificate of any public utility is revoked or amended, the commission may require one or more public utilities to provide service in the area in question." Section 62(b)

is premised on § 62(a) which provides for revocation or amendment of a certificate if the Commission "finds that the certificate holder has never provided or is no longer providing service in the area, or part of the area, covered by the certificate." The Commission did not find that General Telephone was not providing service within its area but did find that General Telephone has provided the Gin with telephone service since 1951 and continues to provide the Gin with multiparty rural business and residential telephone service. Section 61(1) is inapplicable because the Commission did not order General Telephone to improve its service within its certificated area. There is no basis on which the Commission may direct a utility to provide service within another utility's certificated area pursuant to § 61. The Commission may do so pursuant to § 62(b) but only after making the finding that § 62(a) requires. Although PURA provides procedures by which the Gin may have obtained the service necessary for the TELCOT circuit, those procedures were not followed in the instant cause. By granting an "exception" to the certificate of General Telephone and ordering South Plains to continue to furnish service, the Commission exceeded its statutory authority. We overrule South Plains' points of error one and three.

Because of our disposition of these points, we need not address South Plains' second point of error.

Appellant, Citizens Coop Gin, also raises three points of error. Points of error two and three directly challenge findings of fact made by the Commission. Consequently, appellant should have raised these claims in a motion for rehearing before the Commission. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 16(e) (Supp.1987); *Purolator Armored, Inc. v. Railroad Comm'n of Texas*, 662 S.W.2d 709, 714 (Tex.App.1983, no writ). Because the Gin has not preserved these points of error for review, we overrule points of error two and three.

In its first point of error, the Gin argues that the district court erred "in not sustaining the decision of the PUC on the grounds that the [PURA] excludes private telephone

systems from regulation by the PUC, thereby recognizing the right to construct and operate such systems across the boundaries of exchange areas authorized to be served by the regulated telephone companies." Under this point, the Gin argues that South Plains provides the Gin with facilities and equipment only within South Plains' certificated area; that the Gin is not a "consuming facility"; and by implication, that South Plains is acting pursuant to its certificate of public convenience and necessity.

We disagree with this argument by first noting that the Commission order underlying this cause does not purport to regulate the Gin or its installation of distribution lines. Although those lines do connect with South Plains' equipment within its certificated area, we conclude that the utility is rendering service to an area to which another utility already supplies service. Pursuant to § 50(2), the location of the consuming facility determines the area for which a utility must obtain a certificate. Section 3(s) defines "service" not only in terms of facilities and equipment but also in terms of the power or capability which a utility provides. It is the capability to transmit and receive communications that the utility provides and the Gin consumes. For the purposes of PURA, the Gin is a consuming facility of telephone service. The Gin's interpretation of the statute would frustrate the purpose of the certification process which the Act prescribes by rendering certification largely ineffective. *City of Brownsville*, 616 S.W.2d at 406. The Gin's first point of error is overruled.

We affirm the judgment of the district court.